OPINION OF THE COURT
Bruce G. Dean, J.
By notice of motion returnable before this court on February 6, 1978, defendant moves to suppress an oral statement made by him to police officers concerning the accusation of the crimes of burglary in the first degree and petit larceny, as alleged under the indictment, occurring at 415 Cascadillla *245 Street, City of Ithaca, County of Tompkins. Said statement of October 12, 1977, is contained in the "Notice of Intent to Use Admissions” served upon defendant on December 21, 1977. Defendant alleges that the statement was involuntarily made, inadmissible in evidence, and should be suppressed. (CPL 60.45.) Hearings were held on the issues of suppression on April 18, 21, 27, 28, 1978. Briefs were received as follows: from defendant on May 16, 1978; from the District Attorney on August 2,1978.
The following constitute findings of fact and conclusions of law:
The foundation of defendant’s argument is that he was not completely and effectively advised of his rights, nor did he willfully, knowingly, intelligently and voluntarily waive those rights pursuant to the mandate of Miranda v Arizona (384 US 436), because he was psychologically and physically weakened and pressured or coerced. The defendant places primary reliance upon People v Zimmer, (68 Misc 2d 1067, affd 40 AD2d 955), in support of his argument denying the voluntariness of his statement. The court finds that under the totality of the circumstances, based in part upon the guidelines set forth in Zimmer, that the State has not met its burden in proving beyond a reasonable doubt the knowing and intelligent waiver of defendant’s rights in this case. The court here, considers the totality of circumstances, the daylong procedure starting at 3:00 a.m., and primarily the limited sleep of not more than three hours, the defendant being awakened at about 6:00 a.m., and the statement of Investigator Kelly that insufficient sleep, inter alia, would affect the polygraph procedure or results. The court finds an intensive, ardous day commencing in the early morning and finds defendant to be improperly prepared for the daylong interrogation. This relates only to matters involved from the time of arrival at Owego at about 8:00 a.m. All statements prior thereto, where relevant to the Cascadilla Street burglary, are not subject to suppression.
In People v Zimmer (supra), defendant had voluntarily taken the alleged lie detector test, had been advised by the police officer that it indicated she was lying and further that the results of the test were admissible in court as evidence. The court in Zimmer denied admission of the confession and made note of the crucial factor of psychological coercion in modern in-custody interrogation. The Zimmer court noted (p 1074) that: "Psychological coercion may be any method or *246 technique which is intended to, or may, play directly or indirectly upon the defendant, so as to instill in him a sense of fear, foreboding, insecurity, or other feeling which will induce, motivate or compel him to waive his rights and respond to questions posed by law enforcement officers.”
The court in Zimmer, and in another factually similar case, People v Golwitzer (52 Misc 2d 925), made note of the sensitive interplay between the mental stability of the individual being interrogated by a polygraph machine and the psychological pressures that interrogators employ, rendering a statement involuntary, The defendants in both Zimmer and Golwitzer were able to obtain medical testimony with respect to the state of their mind during the polygraph exam. And, the court in both cases concluded that the defendants were unable to withstand even mild psychological pressure due to their mental instability.
In the case at bar, it is clear that the defendant’s state of mind was in a more stable state than either defendant in Zimmer or Golwitzer, even though the defendant in the instant case was 16 years old at the time of questioning and had obtained little, if any, sleep the night before the polygraph. However, the conduct on behalf of the law enforcement officials in the instant case appears more severe and with more pressure than those interrogating in Zimmer and Golwitzer. In Golwitzer, defendant was interrogated a maximum of four hours, and the Zimmer defendant was in the polygraph room only two hours. In the case at bar, defendant was in custody in the polygraph room, under investigation, for eight hours in total, although the actual test appears to be less than two hours.
This court is not called upon to, nor will it, decide the voluntariness of statements made in the polygraph room after the examination was complete. The only statement at issue is one made by defendant in the police car on the return trip from Owego to Ithaca. The essential question, therefore, is whether the State has proven beyond a reasonable doubt that the techniques employed during the total of eight hours of in-custodial interrogation were legitimate, consider the issue of defendant’s physical and mental condition. Investigator Kelly was asked by Attorney McDermott:
"QWell, does the amount of rest one receives or can the amount of rest one receives have an effect on the results of the polygraph examination?
*247 "A Absolutely.
"Q And as a matter of fact is it a part of your training that this is one of the things that you have to be concerned about and look after to ensure an appropriate test?
"A Yes, that’s why I gave the opinion that I did, qualified it, due to the fact that there had been a disruption in his normal activity.
"Q And in general would it be fair to say that as a polygraph examiner you also must be concerned with the general health both phsyical and psychological of the party to be tested?
"A Certainly.”
Was there a valid statement made in the police car? The court would question the admissibility of any statements to the State Police during the polygraph in view of the possible involvements of the homicide issue, which would be prejudicial to defendant.
The case law in New York has construed the requirement of Miranda strictly, necessitating an affirmative act on defendant’s part in the form of a specific answer to the question relating to the waiver of his rights. (People v Anonymous, 58 Misc 2d 13.) Even though there is sufficient evidence in the case at bar to establish that the defendant was attempting to "beat the polygraph” with respect to the homicide, it was not his intent to be questioned with respect to the burglary at the time defendant waived his rights. This factor would be considered along with the physical factor. The physical factor is considered by reason of the lengthy and extended questioning of defendant.
 In New York, the use of a polygraph will not in and of itself render a confession inadmissible as coercive, and polygraph results may be used to impeach defendant’s original story. (People v Wilson, 78 Misc 2d 468, affd 47 AD2d 671; People v Zimmer, 68 Misc 2d 1067, affd 40 AD2d 955, supra.) However, it is an open question in New York whether a postpolygraph confession with respect to a crime not questioned upon during the polygraph, and not obtained as part of the polygraph debriefing procedure, will be admissible against the plaintiff. It is not a sufficient response to say that defendant waived his rights with respect to a confession concerning any crime where he waived his rights prior to the polygraph, because defendant volunteered information that was limited *248 in scope. When defendant waived the protection afforded Miranda in the polygraph room it could be considered and argued that it was for the sole purpose of permitting the interrogators to ask questions concerning a particular crime without a lawyer present. In this case the particular crime was homicide. It can be argued that it is not sufficient to presume that because defendant knew that he would be questioned by State Police about a homicide, he must have known the possibility of a confession to the totally unrelated burglary made to city police officers. The evidence from the record should be examined on the issue of whether defendant was ever advised that his statements with respect to unrelated crimes could be used against him. The burden being upon the State to show that defendant was fully apprised of his rights when he made the admissions in issue, the confession could be withheld. In any event, it is the decision on the present record that the present circumstances preclude the admissibility of the statements en route to Ithaca.
There is an analogous line of cases which stand for the proposition that a defendant may be questioned about one case, even though he is in custody on another bona fide charge. (People v Taylor, 27 NY2d 327; People v Wade, 35 AD2d 401.) Pursuant to both Taylor and Wade, the fact that the defendant may be represented by counsel on the first, unrelated charge, will not cause the suppression of any confession resulting from such questioning. Taylor and Wade, however, are not logically analogous to the facts of the instant case. The defendant herein was picked up on October 12, 1977, on criminal trespass charge and never formally charged. The critical issue in Taylor and Wade is whether defendant made a knowing and intelligent waiver of his rights with respect to one crime while being incarcerated for another. In Taylor and Wade there is no question that defendants had been advised of their rights immediately before confessing, and voluntarily waived those rights in offering a statement. In the case at bar, defendant was advised of his rights early in the morning, at approximately 9:00 a.m., and did not allegedly "confess” until approximately 6:00 p.m., nine hours later. Taylor and Ward did not involve the "spillover” effect of a Miranda rights waiver from one crime to another.
A directly analogous case that does involve a spillover of a Miranda waiver was decided by this court and affirmed by the Appellate Division. (People v Manley, 40 AD2d 907.) Under *249 Manley, defendant had confessed to one burglary immediately after waiving his Miranda rights. While the police accompanied defendant to where the goods of the first burglary had been stashed, they discovered goods from another burglary to which defendant confessed without another statement of his rights. This court correctly decided that the waiver of rights with respect to the first burglary stood valid against the second. It is indisputable that any defendant who voluntarily walks into a police station to confess to one burglary may jeopardize his rights with respect to another burglary when waiving those rights. By contrast, in the case at bar the nature of the crime tested by the polygraph and that crime confessed to in the patrol car differs dramatically. This is not to say, however, that waiver of rights for one unrelated crime can never affect rights with respect to another. The course of events that intervened between the waiver of rights before the polygraph on the one hand and the admissions in the patrol car in the instant case are of such a nature that a court should question whether the confession could not have been made pursuant to a knowing and intelligent waiver by reason of a prior waiver.
Summarizing the record of October 12, 1977: As the record in the instant case shows, defendant was not picked up until 2:30 a.m. the night before the polygraph exam, and obtained a maximum of three hours sleep before being tested the next morning. Defendant, not being formally charged, was taken to another police headquarters and intensively questioned from approxmately 9:00 a.m. until 5:00 p.m. with short breaks for lunch and to rest. There is also evidence that defendant was familiar with police procedures and tactics which militate in favor of his confession being knowingly and intelligently made. However, there is ample evidence to show that the police in the instant case did not take the time to thoroughly advise defendant of his rights and that defendant, with three hours sleep, was put under severe strain during interrogation throughout the course of the afternoon. After being placed in the patrol car, defendant was not again advised of his rights before admitting to the burglary. The course of events throughout the afternoon was sufficiently severe to render any admissions to an unrelated crime inadmissible. Defendant’s physical and emotional energy, already having been spent during interrogation with respect to the homicide, the police officers were not free to "tag on” a burglary confession with *250 out renewing defendant’s Miranda rights in the police car preliminarily to the continued interrogation. For the foregoing reasons, People v Manley (40 AD2d 907, supra) clearly differs on the facts although not on the law, for to hold otherwise would be mainfestly unjust. The tactics utilized by the police in the instant case were not per se psychologically coercive; however, the length of the interrogation combined with the restricted purpose for which the waiver was signed, has not been sufficiently overcome by the State with enough evidence of voluntariness to sustain its burden of proof beyond a reasonable doubt.
Accordingly, the court suppresses the following in the "Notice of Intent to Use Admissions, Schedule A”, which is the statement of Detective William Burin of "10-26-77”:
"Date: October 12, 1977 Time: exact time unknown
"Place: enroute from Owego State Police barracks to Ithaca Police Department
"Made To: Detective W. Burin and Detective R LaLonde
"Substance of Admissions: see attached police report”
The motion to dismiss under CPL article 210 is denied.
The order granting inspection of the Grand Jury minutes is denied. The court finds the evidence legally sufficient to support the offense charged in Indictment No. 77-109.